TEXAS BAPTIST UNIVERSITY et al. v. PATTON et al.

(Court of Civil Appeals of Texas. Dallas. March 23, 1912.)

1. EVIDENCE (§ 318*) — HEARSAY — LETTERS WRITTEN BY OTHERS.

On an issue of insolvency of the maker of a note sued on, a letter written to him by a third person requesting him to take up certain other notes at a discount was hearsay, and inadmissible.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1193–1200; Dec. Dig. § 318.*]

2. GUARANTY (§ 90*)—INSOLVENCY OF PRINCIPAL—EVIDENCE.

The good faith of the maker of a note sued on in other particular transactions could not be attacked and proved for the purpose of establishing his insolvency, so as to charge a guarantor of the note sued on.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 103; Dec. Dig. § 90.*]

3. GUARANTY (§ 90*)—INSOLVENCY OF PRINCIPAL—EVIDENCE.

On an issue as to whether the principal maker of a note was insolvent, so as to charge a guarantor, evidence as to the total amount he owed either as original maker or as indorser on accommodation paper was inadmissible, since his obligation as indorser for another could not lawfully be considered in determining his insolvency, in the absence of proof as to the solvency of the person primarily liable.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 103; Dec. Dig. § 90.*]

4. WITNESSES (§ 240*)—EXAMINATION—LEADING QUESTIONS.

Where, in a suit on a note, plaintiff claimed that defendant L. had guaranteed payment by a separate written instrument, and had also misrepresented the maker's residence, and had advised plaintiff not to sue the maker because he was insolvent, declaring that he, L., intended to pay the note and had collected moneys which should have been paid over to plaintiff and had appropriated the same, but plaintiff did not take the stand in his own behalf, it was error to permit him to prove his case by leading questions propounded to him on cross-examination by his own counsel on his being called as a witness by one of the defendants other than L.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 795, 837–839, 841–845; Dec. Dig. § 240.*]

5. GUARANTY (§ 92*)—INSOLVENCY—INSTRUCTIONS.

Where, in an action on a guaranty of a note, the evidence did not conclusively establish that the principal maker was absolutely insolvent, the court should have instructed, at defendant's request, that if at the maturity of the note the maker owed debts which he could not pay at the time, but then had property and assets which exceeded the amount of his debts, and which could have been reached by process of law, he would not be considered an insolvent.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. §§ 105, 106; Dec. Dig. § 92.*]

6. TRIAL (§ 255*)—INSTRUCTIONS—NECESSITY OF REQUEST.

The court's omission to charge that the burden of proof was on plaintiff was not reversible error, in the absence of a request for such charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 627–641; Dec. Dig. § 255.*]

7. TRIAL (§§ 203, 205*)—SPECIAL ISSUES—INSTRUCTIONS.

The court, if requested, should charge the jury with reference to the rules of law applicable to the various issues involved, including the charge on the burden of proof, though the case is submitted on special issues.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 477–479, 496; Dec. Dig. §§ 203, 205.*]

8. TRIAL (§ 351*)—SUBMISSION TO JURY—SPECIAL ISSUES—STATUTES.

Acts 26th Leg. c. 111, declaring that a case shall not be submitted to a jury on special issues unless one or all of the parties to the suit request such submission, is mandatory, and, in the absence of such a request, it is error for the judge to so submit the case.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 834–839; Dec. Dig. § 351.*]

9. EVIDENCE (§ 423*)—INDORSEMENT—EXPLANATION—PAROL EVIDENCE.

Where plaintiff sued on a note executed by defendant P. to L. and by L. indorsed, L. was entitled to prove by parol, when sued as an indorser, that the note in fact was executed for the benefit of a university for which he was secretary and business manager, and by mistake made payable to him instead of the university, and that the indorsement was made merely to transfer title, and not for the purpose of incurring any personal obligation as indorser.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1957–1965; Dec. Dig. § 423.*]

Appeal from District Court, Dallas County; Kenneth Force, Judge.

Suit by E. G. Patton against H. H. Pearce and others, in which defendant A. S. Laird

claimed the right to recover over against the Texas Baptist University in case of a judgment recovered by plaintiff against him. Judgment for plaintiff against defendants Pearce and Laird, and that Laird alone recover over against the University, from which the latter appealed, and defendant Laird prosecuted a writ of error. Reversed and remanded.

T. F. Lewis, E. G. Senter, and John W. George, all of Dallas, for appellants. Parks & Patton, of Dallas, for appellees.

TALBOT, J. This suit was brought by the appellee, E. G. Patton, against H. H. Pearce, A. S. Laird, and the Texas Baptist University to recover the sum of $1,500, together with interest and attorney's fees, alleged to be due on a promissory note dated May 23, 1907, and payable on or before November 1, 1908. The plaintiff's amended and supplemental petitions upon which the case was tried averred, in substance: That the Texas Baptist University is a private corporation, and had its domicile in the city and county of Dallas, Tex. That H. H. Pearce resides in Dallas county, Tex., but was believed to reside in Oklahoma City, county of Oklahoma, state of Oklahoma, at the time of the institution of this suit. That on May 23, 1907, said defendant H. H. Pearce executed and delivered to A. S. Laird his certain promissory note in writing of that date, whereby he promised to pay to the order of the said A. S. Laird at Dallas, Tex., on or before November 1, 1908, the sum of $1,500, with interest thereon at the rate of 8 per cent. per annum from date until paid, and also stipulated to pay 10 per cent. of the amount thereof as attorney's fees if placed in the hands of an attorney for collection. That before the maturity of said note the said A. S. Laird for a valuable consideration indorsed and delivered said note to plaintiff and that the said Texas Baptist University, per A. S. Laird, secretary, after the maturity of said note, for a valuable consideration, indorsed said promissory note. That when the said note was indorsed by the Texas Baptist University, per A. S. Laird, secretary, plaintiff was then the owner and holder of said note, and, said note being indorsed after maturity, the said Texas Baptist University became liable thereupon as maker, and the said A. S. Laird thereby guaranteed the said indorsement to be true and genuine. That the said note was not paid when due, and was placed in the hands of an attorney for collection. That said note was not protested, and suit was not brought on same at the first term of court after the right of action accrued, but was brought before the second term of court, and that plaintiff has good cause why said suit was not instituted the first term after his right of action accrued, in that, at the time said note was indorsed and delivered to plaintiff by the said defendant Laird, the said Laird executed and delivered to plaintiff a written agreement, which was as follows, to wit: "Dr. E. G. Patton, if Pearce does not pay said note when it falls due, I will pay it." And, after signing said instrument, said defendant Laird gave it to plaintiff. That the acceptance of said note of Pearce was based upon the indorsement of same by the said Laird and by his said promise to pay the said note when it fell due. That by reason of said agreement and indorsement said Laird bound himself to pay said note as an original undertaking on his part as well as being bound by indorsement of said note. That at the time of the delivery of said note by said Laird to plaintiff said Laird informed plaintiff that Pearce was a banker and lived out west. That shortly after receiving said note, and a short time before the said note became due, the said defendant Laird, upon inquiry by plaintiff, informed plaintiff that the defendant Pearce did not reside in Dallas, but resided in Oklahoma City, Okl. That said plaintiff believed the statement of said defendant Laird, and promptly addressed a letter to H. H. Pearce, Oklahoma City, Okl., notifying him that plaintiff held the note sued on and requested him to let plaintiff know if he, Pearce, proposed to pay the same when due. That he received no reply to said letter, and that said Pearce at the time said note became due was a nonresident of the state of Texas, and was in Oklahoma, and plaintiff was so lead to believe by the statements of the said defendant Laird. That if said statements were not true, and the said defendant Pearce resided in Texas, then the said Laird falsely and fraudulently represented to plaintiff that said Pearce was a resident of Oklahoma, and deceived and lead plaintiff to believe that he then resided in Oklahoma. That, when said note became due, plaintiff called upon Laird to know where Pearce could be found, and to know whether or not Pearce was going to pay the note. That thereupon, at the time and after the note became due, the said Laird informed plaintiff that Pearce was a nonresident of the state of Texas, and was insolvent; that he, Laird, would pay the note. That in February, 1909, the said Texas Baptist University was endeavoring to make a loan, whereby it did receive funds sufficient to pay off the vendor lien notes held by said Laird and the plaintiff. That the said plaintiff, having promised the Texas Baptist University that he would donate to the said University about $3,000 consisting of the vendor lien notes held by the said plaintiff, delivered the same to said Laird to be by him delivered to the Texas Baptist University. That said Laird at said time promised so to do, and promised that, if plaintiff would execute a release of his lien on said property of the said Texas Baptist University, then he would take the same and

collect the money that was due him (Laird) and would pay plaintiff out of same, as soon as he received said money. That said plaintiff relied upon said promises and in consideration thereof surrendered to him said notes, and also executed a release of his vendor lien. That upon said Laird receiving said money he refused to pay the note sued on, whereupon plaintiff on the 19th of February, 1909, instituted this suit. That Laird agreed with plaintiff on the 11th day of February, 1909, that, as soon as he collected money due him by the Texas Baptist University, he would pay plaintiff all he owed him. That Laird collected from the University about $18,000, and upon demand by plaintiff he failed and refused to pay.

The defendant Pearce simply waived citation, and entered his appearance. The defendants Laird and Texas Baptist University filed separate answers. Laird averred, in substance, in his amended answer: That he was released as indorser because the note sued on had not been protested for nonpayment, and suit had not been brought thereon at the first term of the court after its maturity, etc. That the note sued on was executed by Pearce to the Texas Baptist University, a corporation, in payment for certain bonds issued by it of the same face value. That at the time of this transaction plaintiff was a member of the board of trustees of said Texas Baptist University, and was fully cognizant of and approved same. That in executing said note Pearce inadvertently made it payable to Laird, who was at the time a member of the board of trustees of said Texas Baptist University, and was its secretary, business manager, and agent. That in the course of the discharge of his duties as business manager and agent of said corporation it was customary for Laird to receive checks and notes made payable to himself individually, which were for the benefit of and belonged to the Texas Baptist University, and which were thus written as a matter of convenience or inadvertence. That plaintiff was fully cognizant of this custom. That he had been for a long time prior to said transaction an active member of the board of trustees of said corporation, and had actively participated in the administration of its affairs, and fully approved of said procedure. That said bonds were issued in part for the purpose of paying certain indebtedness owing at the time by said university to plaintiff. That, in order to raise money for said purpose, said bonds for $1,500 were by said Texas Baptist University sold to Pearce. That at the time Pearce was engaged in the banking business at Robert Lee, Coke county, Tex., and was regarded as strongly solvent by the plaintiff and by all the trustees of the Texas Baptist University. That he was at the time and had been for about two years a member of the board of trustees of the Texas Baptist University, and had been a liberal contributor to its finances, all of which was fully known to plaintiff. That because thereof, and because said note of Pearce was regarded as a valuable asset equivalent to its face value, the Texas Baptist University, acting through Laird, sold and delivered to Pearce 15 of its bonds of the face value of $100 each, and took in payment therefor the note sued on, which transaction was known to and was approved by the plaintiff at the time. That a short time thereafter Laird, acting for the Texas Baptist University, and being authorized so to do, transferred to plaintiff the note sued on in payment of certain notes of the face value of $150 each, then held by the plaintiff, and the payment of which had been assumed by the Texas Baptist University with the knowledge and approval of plaintiff. That said notes so paid off had been originally executed by Laird to plaintiff in part payment for the property, known as Patton Seminary. That said property had thereafter been sold by a corporation of which the plaintiff was president to the Texas Baptist University, and that in such sale, to which plaintiff was a party, the Texas Baptist University assumed the payment of said notes. That when plaintiff bought and received the note sued upon, he took it as the property of the Texas Baptist University in payment of notes which were at the time, as he well knew, owing by the Texas Baptist University, payment having been assumed by it. That said note was made payable to Laird because of his official relation to said corporation. That it was not his property, and that he did not claim any interest therein, and that his name appeared as payee in the note by reason of a mistake of the payor in executing it. That Pearce was solvent at the time of the maturity of the note. That plaintiff was at the time president of the Union National Bank of Dallas, which at the time held securities belonging to him sufficient, above all incumbrances thereon, to have enabled plaintiff to have enforced out of the proceeds thereof the collection of the note. That plaintiff knew, and by the exercise of ordinary care would have known, of said facts, but that he delayed unreasonably the bringing of suit. That, if Pearce be insolvent, such condition arose after the filing of suit. That, if Laird is liable, it is only as an indorser, that Pearce is primarily liable, and the Texas Baptist University the real indorser, this defendant having acted only as its agent in the transaction, and that, if judgment should be given against him, he should have judgment over against Pearce and the Texas Baptist University. Defendant Laird also pleaded in reconvention asking judgment against the plaintiff for wrongful suing out of writ of garnishment and service of same on the Union National Bank. He filed a supplemental answer denying under oath that he had ever given plaintiff a written guaranty of payment of the Pearce note. The plaintiff demurred specially to the de-

fendant Laird's answer wherein Laird alleged, in effect, that he simply indorsed said note to said Patton as a matter of form and without any consideration of any source to said Laird, in order to put said note in such form and condition that said Patton could hold, collect, deal with, and negotiate the same, in that said allegation (a) states a conclusion; (b) seeks to vary the terms of said indorsement and contradict by parol without any allegation of uncertainty, fraud, or mistake. This demurrer was sustained, and by a trial amendment Laird pleaded that the indorsement of his name on the Pearce note was done through mutual mistake; that it was the intent of all parties to said transaction that said note should be assigned by the Texas Baptist University, its owner and holder, to plaintiff in part payment of a debt owing by said concern to plaintiff, and that none of the parties to the transaction understood or intended that Laird should become an indorser on the note; that by mutual mistake of all the parties his name was written on the back of the note, giving the appearance of an indorsement, which was not intended by any of the parties; and that this was well understood by the plaintiff at the time, and that the plaintiff never asserted any liability against him until the filing of suit. Plaintiff again urged his demurrer upon the ground that the trial amendment "sought to vary by parol evidence the terms of the note sued on," and the demurrer was sustained, and the defendant Laird excepted to the ruling of the court. The defendant Texas Baptist University adopted that part of the answer of the defendant Laird setting up the facts relating to the transaction in which the plaintiff received the Pearce note from Laird, and alleging the failure of the plaintiff to bring timely suit to fix the liability of the indorsement. It also alleged that its bonds in the amount of $1,500 were delivered to Pearce for his note; that both Pearce and the plaintiff Patton had served for a long time as members of the board of trustees of said defendant; that Pearce was reputed to be highly solvent, and was so believed to be by all of its trustees, including plaintiff, and because thereof the bonds of said defendant were delivered to him in exchange for his note, without security; that plaintiff was, or should have been, familiar with said transaction; that it was entered upon the books of said defendant, to which plaintiff had access as its trustee; that thereafter this defendant paid off a considerable amount of the indebtedness it had assumed which was owing to the plaintiff, and that, in making such payment, the Pearce note was by this defendant, acting through Laird, sold and transferred to plaintiff in full payment of said indebtedness to the extent of its face value, and was so received by plaintiff; that, when he took said note, he was well aware of all of said facts pleaded by defendants herein, and with full knowledge thereof he took said note in full discharge of this defendant's obligation to him for an equivalent amount and gave release therefor, and never notified this defendant that he claimed or asserted any liability against it on account of said transaction until the filing of suit herein, but assured its officers to the contrary. The defendant also pleaded under oath that it received no benefit or consideration from the indorsement of its name on the Pearce note just before the institution of suit.

The court submitted the case to the jury on special issues, and, upon their verdict, entered judgment in favor of the plaintiff against the defendants Pearce and Laird for $2,096.15; that plaintiff take nothing against the Texas Baptist University, but that Laird recover over against the Texas Baptist University the amount decreed in favor of the plaintiff. From this judgment the Texas Baptist University appealed, and the defendant Laird prosecuted a writ of error, and both will be referred to in this opinion as appellants.

There are a number of joint assignments of error, and several presented separately by the appellant. We shall not undertake to state and discuss each of these assignments in detail. Such only as we believe point out error and should be specifically mentioned in view of another trial will be discussed.

[1] The first assignment complains of the court's action in admitting in evidence the following letter purporting to have been written by J. S. Haney, namely: "Robert Lee, Nov. 23, 1909. Mr. H. H. Pearce, Dallas, Texas—Dear Sir: I have this day settled off the notes this bank holds against me in your favor. What can you do for me? I have got a discount on the notes which if you will pay me right away, I advise you that I will give you that much. Let me hear from you by return mail. I am as ever, yours truly, J. S. Haney." We agree with the contention of appellants that this testimony was hearsay, and not admissible under the circumstances of this case to show insolvency on the part of the defendant Pearce.

[2] The court also erred as claimed in the second assignment in permitting the defendant Pearce to testify over the objections of appellants that part of the collateral paper given by him to the First National Bank of Robert Lee was accommodation paper, and that he had represented to said bank and other banks that his collateral paper deposited with them by him was good collateral and that the makers thereof owed him, when, in fact, they did not owe him anything. This was especially prejudicial error, because, as the bill of exceptions shows, the appellants were not allowed to fully cross-examine the witness in regard to these matters. We do not think the good faith of

Pearce in particular transactions could be attacked and shown for the purpose of establishing his insolvency.

[3] The third assignment of error is that "the court erred in permitting the defendant Pearce to testify over the objections of these defendants how much in all he owed as an original maker and as an indorser on accommodation paper, taking into consideration everything, whether he owed it for himself or for some one else, as shown by bill of exception No. 5 of these defendants." The proposition under this assignment is as follows: "The obligation which one person may have indorsed for another cannot be lawfully considered in determining his solvency in the absence of any testimony relating to the solvency of the person primarily liable." This proposition embodies a correct proposition of law we think, and the assignment must be sustained.

[4] Appellants' nineteenth assignment of error complains that the court erred in permitting counsel for the plaintiff to ask the plaintiff Patton leading questions while he was on the stand, and to suggest the answers to the witness, and to make out plaintiff's case by such suggestions, as shown by bill of exception No. 43. We think the court erred as to the appellant A. S. Laird in so allowing the witness to be questioned. The plaintiff in his petition alleged that the defendant Laird had given him a separate written instrument guaranteeing the payment of the Pearce note. He also made extensive allegations to the effect that Laird had misrepresented Pearce's residence, had advised him not to sue Pearce, had represented that Pearce was insolvent, had declared that he himself intended to pay the note, and the petition further alleged, in substance, that Laird had collected moneys which should have been paid over to the plaintiff and had appropriated such funds. Notwithstanding these allegations, the plaintiff though present in court, rested his case without taking the stand in his own behalf. The bill of exceptions reserved to the action of the court here complained of shows that the Texas Baptist University afterwards called the plaintiff to the stand, and that it was stated at the time that he was called as its witness. Being thus called, he was not Laird's witness, and leading questions over his objections were not permissible as to him. In justice to the learned trial judge, it should be stated, however, that the record indicates that the appellants in a large measure were making a common fight to defeat plaintiff's action, and that it was probably difficult to draw the line between them in his rulings. But there was, it seems to us, a clear line of demarcation in their respective defenses upon material matters, and this is evidenced by the judgment rendered in favor of Laird against the University. The question is not likely to occur upon another trial, and we may add in view of the fact, as pointed out by counsel for appellees, that so much of the matter brought out by the leading questions complained of were stated by the witness on direct examination by appellants' counsel that it is probable we would not reverse the case on this ground alone.

[5] The appellants requested the court to charge the jury as follows: "You are instructed that if you should find and believe that at the time of the maturity of the note sued on the defendant Pearce owed debts which he could not pay at the time, but that he had at the time properties and assets which exceeded the amount of his debts and which could have been reached by process of law, he would not be considered insolvent within the meaning of the law applying to this case." The refusal of this charge is made the basis of appellants' thirtieth assignment of error. We think the charge, in view of the evidence, should have been given. The testimony did not conclusively establish that the defendant Pearce was absolutely insolvent. There was testimony to the effect that at the time of the maturity of the note sued on Pearce owned unincumbered property situated in Dallas county, Tex., worth about $400 or $500; that his collaterals in bank at that time were worth about $5,000 more than the debts they secured; and that he had a house and lot in Coke county, Tex., worth about $500. In Smith v. Ojerholm et al., 93 Tex. 35, 53 S. W. 341, after quoting the statute, which authorizes suit against the "assignor, endorser, or guarantor," without the necessity of previously or at the same time suing the maker, our Supreme Court said: "The reason for relieving the indorsee from the necessity of suing the principal debtor in the excepted cases was either that a suit against him was not practicable, or that it would result in no good. Hence we think that it cannot be said that a principal is insolvent, within the meaning of that statute, when any part of the debt can be made by execution against him."

[6, 7] The thirty-second assignment charges that the court erred in failing to instruct the jury that the burden of proof was on the plaintiff to establish by a preponderance of the evidence the issues submitted to them. There being no charge requested on this subject, the omission of the court does not constitute reversible error; but, in view of another trial, we will take occasion to say that, even though a case is submitted on special issues, the court should, if requested, give to the jury the rules of law applicable to the various issues and necessary for them to understand in order to render their verdict understandingly (Southern Cotton Oil Co. v. Wallace, 23 Tex. Civ. App. 12, 54 S. W. 638), and that this would include a proper charge on the burden of proof.

[8] Appellants further assign as error the trial court's action in submitting this case to the jury on special issues. The proposition is that this was done without any request

made in writing or on application in open court therefor by either party. This proposition is supported by the record, and requires a reversal of the case no matter what effect should be given to the jury's finding that the defendant Laird, after he had indorsed the note sued on, guaranteed the payment of said note in writing, or whether or not, in view of such finding, the court's rulings ·bearing upon the question of the defendant Pearce's solvency become immaterial. Our present statute (Acts of 1899 [Acts 26th Leg. c. 111]) declares that a case shall not be submitted to a jury on special issues by the court, unless one or all parties to the suit request such submission. This statute is not merely directory, and unless, as therein provided, "one or all parties to the suit" request that the case be submitted on special issues, the court is thereby prohibited from so submitting it. Prior to the enactment of this statute, our courts held that, if a request was made by a party to the suit to submit the case on special issues, the court had no discretion in the matter; but since its enactment it is held that such a change is thereby made in former statute that it is now discretionary with the trial judge whether he will submit the case on special issues, when requested. Railway Co. v. Jackson, 93 Tex. 262, 54 S. W. 1023; Woodmen of World v. Locklin, 28 Tex. Civ. App. 486, 67 S. W. 336. No such discretion exists, however, when neither of the parties requests such a submission. Unless there is a request by one of the parties, as stated, the judge not only has no authority to submit the case on special issues, but he is by statute prohibited from so doing.

[9] The appellant A. S. Laird assigns as error the action of the court in sustaining the demurrers of appellees to that portion of his pleadings, wherein he alleged, in substance, that the note in controversy was the property of the Texas Baptist University, and was transferred to plaintiff to pay its debt to him; that plaintiff well knew this, and knew when he took the note from Laird that in executing said note the defendant H. H. Pearce had inadvertently made it payable upon its face to A. S. Laird; that, in the course of the discharge of his duties as business manager and secretary of the Texas Baptist University, it was customary for said Laird to receive checks and notes made payable to himself, which were the property of and for the benefit of said University, and that the note sued on was so made payable and received by him and held in trust for said University and indorsed in his name as its agent and trustee merely to pass the title to plaintiff; that the writing of Laird's name on the back of the note in the form of an indorsement was the result of mutual mistake of all parties to the transaction, and that all parties understood that the Texas Baptist University was the real owner, vendor, and indorser of the note. This assign-

ment we think is well taken. For the purposes of the demurrer, the allegations excepted to must be taken as true, and, if true, they present, in our judgment, a legal defense which the appellant Laird was entitled to avail himself of on the trial of this case. It is not simply the ordinary case of an indorser seeking by parol evidence to vary the terms of his contract of indorsement. Laird alleged what he claims the actual contract made was: That, in receiving the note payable to himself from Pearce and in indorsing it to the plaintiff, he was acting in his trust capacity of secretary and agent for the University, and, besides that, his indorsement individually of the note sued on was a mutual mistake, etc. The plaintiff was not an innocent holder of the note, but was ·according to the allegations stricken out fully cognizant of all the facts alleged at the time he purchased the same. Clearly the allegations were not obnoxious to the appellee's demurrers, and under them it was competent for Laird to prove by parol, if he could, the actual contract and intent of himself and appellee Patton to the indorsement as actually made, and to show what indorsement was mutually intended to be made by the contract. Hilliard v. White et al., 31 S. W. 553. It is, of course, a well-established general rule that parol testimony is inadmissible to contradict or vary the terms of the contract which the law implies from the indorsement in blank of negotiable paper; yet this rule has certain limitations and exceptions. Mr. Daniel in his work oh Negotiable Instruments, § 721, in discussing the various circumstances under which parol evidence is admissible to explain or qualify an unrestricted indorsement, says: "Secondly, it might be shown that the indorsement was upon trust for some special purpose, as from a principal to an agent, to enable him to use the instrument or the money in a particular way. In such cases the indorsement is really without a legal consideration, and the evidence does not vary its effect as to a third person, but only discloses relations of trust, which might be shown against the drawer of a bill, or other party with whom the holder is in privity." Doolittle v. Ferry, 20 Kan. 230, 27 Am. Rep. 166; Lovejoy v. Citizens' Bank, 23 Kan. 331; Johnson v. Schnabaum, 86 Ark. 82, 109 S. W. 1163, 17 L. R. A. (N. S.) 838, 15 Ann. Cas. 876. In the case of Lovejoy v. Citizens' Bank, supra, the note sued on "was made payable to the president of the bank individually. and was by him indorsed in blank to the bank. The court held that, notwithstanding the unrestricted indorsement, he could prove. by parol evidence that the note represented a debt of the maker to the bank, and that he (the nominal payee) made the indorsement merely for the purpose of passing title to the bank." We do not concur in the view that, inasmuch as the defendant Laird recover judgment over against the Texas Bap-

tist University, the court's action in striking out the pleadings here discussed and in excluding the evidence offered in support thereof was harmless. The defendant Laird was entitled to have submitted and determined all the legitimate defenses urged by him in avoidance of any recovery against him. He should not be required to submit to the judgment rendered against him, pay it, and take his chances of reimbursement by execution against the Texas Baptist University.

There are perhaps assignments of error not discussed which present in different form some of the questions passed upon in this opinion. Such assignments should be considered as sustained. Those not discussed and which do not involve the questions decided are overruled.

For the reasons given, the judgment of the court below is reversed and the cause remanded.