## L. ROUVANT v. SAN ANTONIO NATIONAL BANK.

(Case No. 5144.)

1. FORGED DRAFT — NEGLIGENCE — BANKS.— The rule that a bank paying a forged check, which on its face appears to have been drawn by one of its customers, will not be heard to assert a mistake as to the signature when the check is forged, is applicable only to cases where the party who received the money on the check has in no way contributed to the consummation of the fraud, or to the mistake of fact under which the payment was made.

2. SAME.— A forged check was presented by a merchant in good standing to his banker, payable to the order of the merchant, which being indorsed by him was paid. The merchant had once before received a check signed by the same party, but with a different name; this fact he did not communicate to the officers of the bank. As soon as the party in whose name the forged check was drawn examined his bank statement (which was more than a

month after the payment), he notified the merchant who received the payment. In a suit between the bank, the merchant, and the party whose name was forged, *held:*

(1) The payee was guilty of negligence in not communicating to the bank before payment the suspicious circumstances under which he received the draft.

(2) That a judgment in favor of the party whose name was forged against the bank for the amount of the check (his money having been used by the bank in paying it), and a judgment in favor of the bank over against the merchant who presented the forged check for a like amount, was proper.

APPEAL from Bexar. Tried below before the Hon. Geo. H. Noonan.

William C. Igel brought this suit to recover $550 claimed to be a balance of a deposit still due him. The bank claimed that it had paid out the amount to appellant on a draft drawn in his favor by Igel, and set forth the draft. Igel claimed that the draft was a forgery. The bank then made Rouvant a party, claiming that the money had been paid to him by reason of his having received and indorsed the draft, etc., and prayed for judgment over against him, in the event Igel recovered against it. Rouvant claimed that the bank ought to have detected the forgery, etc.; that it delayed five or six weeks in the discovery of the forgery.

It seems that Rouvant was slightly acquainted with both Igel and a man by the name of Nichols; that the latter, late one evening, purchased of Rouvant a fine watch and diamond, and gave him the check in payment. He wrote and signed the check in Igel's name in the presence of Rouvant.

Upon the trial the court rendered judgment in favor of Igel against the bank, and in favor of the bank over against Rouvant, and the latter appealed.

*Tarleton & Foreman,* for appellant, cited, on the proposition that the bank must know the signature of its depositor: City Bank *v.* National Bank, 45 Tex., 203 [see lower half of p. 218]; Morse on Banks and Banking (2d ed.), pp. 327–341; American Decisions, vol. 39, pp. 521, 522 (note); Bank of United States *v.* Bank of Georgia, 10 Wheat., 333; National Park Bank *v.* Ninth National Bank, 46 N. Y., 77; Goddard *v.* Merchants' Bank, 4 N. Y., 147; Bank of St. Albans *v.* Farmers' & Mechanics' Bank, 10 Vt., 141; Weisser *v.* Dennison, 10 N. Y., 69; Bernheimer *v.* Marshall, 2 Minn., 78; First Nat. B'k *v.* Ricker, 71 Ill., 439; Espy *v.* Bank of Cincinnati, 18 Wall., 604; Price *v.* Neal, 3 Burr., 1355; Smith *v.* Mercer, 6 Taunt., 76; Levy *v.* Bank of United States, 4 Dall., 234.

That the negligence of the bank was fatal to its right to recover, they cited: 2 Daniel, Neg. Inst. (2d ed.), secs. 1654, 1655, note 3; Morse on Banks and Banking (2d ed.), pp. 341–344; Smith v. Mercer, 6 Taunt., 76; Cocks v. Masterman, 9 Barn. & Cress., 96; Bank of St. Albans v. Farmers' & Mechanics' Bank. 10 Vt., 141; First National Bank of Quincy v. Ricker, 71 Ill., 439; Price v. Neal, 3 Burr., 1354; Gloucester Bank v. Salem Bank, 17 Mass., 33.

*Shook & Dittmar*, for appellee, that the judgment below was proper, cited: National Bank of North America v. Bangs, 106 Mass., 106, 443–446; Daniel on Neg. Inst., vol. 2, § 1361, p. 325; § 1657, pp. 569 and 570.

Watts, J. Com. App.— A bank, in accepting and paying a draft drawn by a customer, is generally held to know the signature, and, if a forged draft is accepted and paid, the bank, as a general rule, will not be heard to assert a mistake as to the signature. City Bank v. National Bank, 45 Tex., 218; Price v. Neal, 3 Burr., 1354; Levy v. Bank of the United States, 1 Binn., 27.

To that general rule, however, there are certain exceptions. In National Bank of North America v. Bangs, 106 Mass., 444, it was said: "But this responsibility, based upon presumption alone, is decisive only when the party receiving the money has in no way contributed to the success of the fraud, or to the mistake of fact under which the payment was made. If the loss can be traced to the fault or negligence of either party, it shall be fixed upon him." Gloucester Bank v. Salem Bank, 17 Mass., 33. In the absence of actual fault or negligence on the part of the drawee, his constructive fault in not knowing the signature of the drawer and detecting the forgery will not preclude his recovery from one who has received the money with knowledge of the forgery, or who took the check under circumstances of suspicion, without proper precautions, or whose conduct has been such as to mislead the drawee, or to induce him to pay the check without the usual scrutiny or other precautions against mistake or fraud." See, also, Ellis v. Insurance & Trust Co., 4 Ohio St., 628.

Here the check had not gone into circulation; it was drawn in favor of Rouvant and was indorsed and collected by him. At that time he was a responsible merchant in the city of San Antonio, and was known to the bank as such. When the check was presented, payable to and indorsed by him, the bank might well assume that there were no suspicious circumstances attending its execution, and

no question as to the identity of the person who drew and signed it. At least his receiving and indorsing the check would have a tendency to mislead, and throw the officers of the bank off their guard, and cause them to accept and pay the check without subjecting it to the same scrutiny as if it had been indorsed and presented by a stranger.

If Rouvant, at the time the check was paid, had informed the bank of the suspicious circumstances under which it was made, or that he was not certain as to the identity of the drawer, doubtless the bank would have subjected the check to such critical examination as perhaps would have resulted in the detection of the forgery.

But a short time before this Rouvant had other transactions with Nichols, and had received from him a check upon the bank under his own signature. This he had presented and collected. Here he accepts a check for $550, executed by the same individual, but under a different signature, in the name of another person. Then can it be said that he was without fault in receiving, indorsing and collecting the check, and not informing the bank of the suspicious circumstances attending its execution? The loss is attributable to Rouvant's negligence, and upon him it should be fixed.

There is nothing in the objection that the delay in detecting the forgery precludes a recovery upon the part of the bank. None of the suspicious circumstances attending the execution of the check, though known to Rouvant, were known to the bank. There was nothing which would suggest to the bank a necessity for a more critical examination of the check. The forgery was discovered as soon as Igel examined his bank statement, and Rouvant was immediately thereafter informed of it.

Our conclusion is that there is no error in the judgment, and that it ought to be affirmed.

AFFIRMED.

[Opinion adopted February 6, 1885.]